UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JENNIFER LYNN PARTON,              )
                                   )
         Plaintiff,                )
                                   )
v.                                 )     No.:   3:10-CV-436
                                   )            (VARLAN/GUYTON)
SMOKY MOUNTAIN KNIFE WORKS, INC.  )
and CHASE PIPES, individually,     )
                                   )
         Defendants.               )

## MEMORANDUM OPINION

Invoking Title VII of the Civil Rights Act of 1964 and supplemental jurisdiction,

plaintiff Jennifer Lynn Parton filed the present civil action against defendants Smoky

Mountain Knife Works, Inc. ("SMKW") and Chase Pipes ("Pipes") (together, "defendants"),

alleging *quid pro quo* sexual harassment and retaliation as well as outrageous conduct [Doc.

1]. Defendants filed a motion to dismiss for failure to state a claim [Doc. 4]. After no

response from plaintiff, defendants filed a motion to grant defendants' motion to dismiss

[Doc. 7]. Shortly thereafter, plaintiff filed a motion to amend the complaint and defendants

filed a response in opposition [Docs. 8, 9]. The Court has carefully considered the parties'

motions and supporting materials [Docs. 1, 4, 5, 7, 8, 9] in light of controlling law. For the

reasons set forth herein, the Court will grant in part and deny in part defendants' motion to

dismiss [Doc. 4], deny as moot defendants' motion to dismiss for plaintiff's failure to

respond [Doc. 7], and grant in part and deny in part plaintiff's motion to amend the complaint [Doc. 8].[1]

## I.   Background and Relevant Facts[2]

Plaintiff alleges she worked for SMKW for fifteen years before she was sexually assaulted by Pipes, who is a shareholder and son of the founder of SMKW and has been employed by SMKW in various capacities [Doc. 1 ¶¶ 6–7]. Plaintiff and Pipes allegedly shared an office at SMKW, and in June 2008, Pipes began placing personal letters to plaintiff on her desk, which disclosed his attestations of amorous intent [*Id.* at ¶ 8]. After receiving the letters, plaintiff informed her direct supervisor, Doug Stone ("Stone"), about the letters in accordance with company policy. Stone advised plaintiff "that it would be unwise to show the letters to the owner of the company" and implied that "providing evidence against the owner's son would place her job in jeopardy" [*Id.* at ¶ 9].

Plaintiff asserts that Pipes's unsolicited affection continued. According to plaintiff, Pipes openly began fantasizing to plaintiff about getting a divorce in order to start a relationship with her, but plaintiff advised Pipes that she was happily married and her relationship with Pipes was strictly professional [Doc. 1 ¶ 11]. Around the same time, plaintiff began fertility treatments to conceive a child with her husband, but this allegedly

---

[1]Plaintiff requested oral argument with respect to her motion to amend. This Court considers requests for oral argument on a case-by-case basis. After reviewing the pending motions, the Court finds that oral argument is not necessary.

[2]Because defendants have moved to dismiss for failure to state a claim, all facts and inferences to be drawn therefrom must be construed in plaintiff's favor. So construed, the relevant facts are taken from the allegations in plaintiff's complaint.

2

agitated Pipes and renewed his interest in wooing plaintiff. He indicated that if she would leave her husband he would provide her with a "better life" [*Id*. at ¶ 12–14].

In August 2008, Pipes allegedly demanded that plaintiff meet him outside of work to discuss his amorous intentions, but plaintiff refused and advised him that it would be inappropriate because she was a newlywed and it would create undue strain on their working relationship [*Id*. at ¶¶ 16–17]. Pipes responded by informing plaintiff that his father would be retiring soon and if she would begin a relationship with him and bear his child instead of her husband's child, he could provide her with all the security she would ever need. He insisted that "once his father retired, no one knew what would happen to her" [*Id*. at ¶¶ 18–19]. Plaintiff's refusal did not thwart Pipes's affection, and at the end of August 2008, Pipes allegedly approached plaintiff again about starting a romantic relationship, presenting her with a Kindle and another love letter [*Id*. at ¶ 20]. Plaintiff told Pipes that she could no longer work with him and informed Stone of the incidents that took place [*Id*. at ¶¶ 21–22]. Stone advised her that he would speak with Pipes about his actions [*Id*. at ¶ 22].

The following day, plaintiff asserts she received a call from Pipes while she was at work. She later learned Pipes called her while he was in line at Wal-Mart, in close proximity to plaintiff's husband, with the intent to taunt her husband about the possibility of an adulterous liaison [*Id*. at ¶¶ 23–24]. The following day, plaintiff again reported the incident to Stone, who then took plaintiff to the company CFO. As a result, Pipes was required to vacate their shared office and apologize [*Id*. at ¶¶ 25–26].

A few weeks later, plaintiff received a text message from Pipes's wife with the word "HOMEWRECKER!" in its body. The following day, plaintiff showed the text message to Stone and informed him that Pipes's behavior had to stop [*Id*. at ¶¶ 28–29]. Afterwards, Pipes allegedly called plaintiff to apologize and requested that she remove the write-up from his file. She advised him that he should not contact her and she would not remove the write-up from his file [*Id*. at ¶ 30]. In the same conversation, Pipes allegedly told plaintiff that "the company was losing money and that people were going to be laid off, and he was not sure her job was safe since she was no longer his friend" [*Id*. at ¶ 31 (quotation marks omitted)]. Plaintiff perceived this as a threat to her employment [*Id*.].

Plaintiff asserts Pipes began a campaign to pressure her to allow him to share her office and repeatedly requested that she drop her complaint against him, assuring that, if she did drop the complaint, things would return to normal. Pipes also would inquire into plaintiff's attempts to conceive with her husband [*Id*. at ¶¶ 32–33]. Plaintiff told Pipes that she was happily married and asked if her continued employment depended upon her not conceiving with her husband, to which Pipes allegedly responded, "no one is safe anymore" [*Id*. at ¶ 34]. Plaintiff claims she again informed her supervisor of Pipes's behavior.

Subsequently, Pipes stopped his harassing behavior and offered the use of his father's farm to stable plaintiff's horses for the winter free of charge [*Id*. at ¶¶ 35–36]. On November 14, 2008, Pipes allegedly called plaintiff at work to discuss the use of his father's farm, but she initially refused his offer. In response, Pipes advised her that job cuts at SMKW would occur in January. Plaintiff asserts she asked if he was threatening her job if she did not

4

accept his demands, but he said he was not and just wanted to help her with her horses [*Id.* at ¶¶ 38–42]. Allegedly, he again warned her that employees were being fired, specifically a particular female employee who refused to cooperate, which plaintiff understood as a threat to her employment [*Id.* at ¶ 43]. The conversation returned to the use of the farm; plaintiff wanted something in writing before she allowed her horses to stay at his father's farm. Pipes offered to take her to the manager of the farm, Martez, and she agreed because she personally knew Martez [*Id.* at ¶¶ 46–47].

Plaintiff arrived at the farm and stood at the front door to meet with Martez. She heard Pipes yell that she should come inside and look at his son's room. Allegedly, as soon as plaintiff walked in the house, Pipes grabbed her from behind and bound her arms with a cloth or rope [*Id.* at ¶¶ 48–49]. Plaintiff protested and asked him to refrain, but Pipes dragged her to his bedroom and forcibly began to kiss her neck. She fought back by biting him. To subdue plaintiff, Pipes grabbed a shirt and placed it over her face. Allegedly, Pipes then forcibly pulled down plaintiff's pants and raped her without wearing a condom [*Id.* at ¶¶ 50–52]. Plaintiff then replaced her clothes and left the building. Pipes asked her if she wanted to see the pasture, but she replied that he was crazy after what he had done to her and she was going to be sick. Pipes said he knew of another woman that could do her job and he had mentioned this to his father. He further stated that "times are tough, so it depends on who needs the job worse" [*Id.* at ¶¶ 54–55].

Plaintiff returned to work and immediately called her physician, who advised her to go to the Emergency Room. Plaintiff went to the Knoxville Rape Center where a rape kit was performed [*Id*. at ¶¶ 56–57]. She did not return to work because she was afraid she would be forced to work with her attacker. Subsequently, her supervisor, without knowing of the attack, later claimed that she voluntarily quit as a grounds for denying her unemployment claim [*Id*. at ¶¶ 58–59].

After the attack, plaintiff claims that SMKW began a smear campaign against her in order to silence her complaint and prevent her from receiving suitable employment. As a result of the incident on November 14, 2008, plaintiff's marriage broke down [*Id*. at ¶¶ 61–63]. Plaintiff was diagnosed with Post-Traumatic Stress Disorder by two separate physicians, for which she continues to seek medical treatment [*Id*. at ¶ 60].

On April 12, 2009, plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC") and with the Equal Opportunity Commission ("EEOC") [Doc. 4-1]. Plaintiff was issued a right to sue letter by the EEOC on July 16, 2010 [Doc. 1-1].

On October 13, 2010, plaintiff commenced this action alleging claims of *quid pro quo* sexual harassment, retaliation, and outrageous conduct [Doc. 1]. Defendants responded with a Rule 12(b)(6) motion to dismiss for failure to state a claim [Docs. 4, 5]. After no response from plaintiff, defendants filed a motion to grant defendants' motion to dismiss due to plaintiff's failure to respond [Doc. 7]. Shortly thereafter, Plaintiff filed a motion to amend the complaint and defendants filed a response in opposition [Docs. 8, 9].

6

## II.     Standards of Review

### A.     Federal Rule of Civil Procedure 12(b)(6)

A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs.,  Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). To satisfy this standard, a plaintiff need only offer "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. A formulaic recitation of the elements of a cause of action will not do, neither will "'naked assertion[s]'devoid of 'further factual enhancement[,]'" nor an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

### B.     Federal Rule of Civil Procedure 15

The Federal Rules of Civil Procedure provide that a plaintiff may amend the complaint once as a matter of course within twenty-one days after serving it, or twenty-one

days after service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a plaintiff may amend only with the opposing party's consent or the Court's leave. Fed. R. Civ. P. 15(a)(2).[3]

Under Rule 15(a)(2) a "court should freely give leave [to amend] when justice so requires." The Court, however, must balance the harm to the moving party if he or she is not permitted to amend against the prejudice caused to the other party if leave to amend is granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citations omitted); *see also Marx v. Centran Corp.*, 747 F.2d 1536, 1550 (6th Cir. 1984); *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 807 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

## III. Defendants' Motion to Dismiss

As a general matter, defendants move to dismiss plaintiff's claims "because the claims are either not cognizable as stated or are time-barred" [Doc. 5].

---

[3]Rule 15(a)(2) governs here. Plaintiff filed her complaint on October 13, 2010, and defendants filed a motion to dismiss pursuant to Rule 12(b)(6) on December 10, 2010. Plaintiff did not file the motion to amend until January 31, 2010, which is more than twenty-one days after defendants filed their motion to dismiss.

8

### A.    Outrageous Conduct Claim

Plaintiff claims that Pipes's conduct was willful, intentional, and reckless in nature and so outrageous that it should not be tolerated by a civilized society [Doc. 1 ¶¶ 76–78]. Further, plaintiff claims that SMKW, both during and after the alleged rape, engaged in conduct that was irresponsible and reckless in nature, and failed to terminate Pipes and fostered a sexually charged atmosphere [*Id*. at ¶¶ 77, 79].  Plaintiff alleges to have suffered irreparable physical, mental, and social harm [*Id*. at ¶ 80].

Defendants assert that the complaint fails to state a claim for outrageous conduct because the state-law action is barred by the statute of limitations.  According to Tennessee law, a claim of outrageous conduct is equivalent to a claim for intentional infliction of emotional distress.  *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997) (citing *Moorhead v. J.C. Penny Co., Inc.*, 555 S.W.2d 713, 717 (Tenn. 1977)).  Claims of intentional infliction of emotional distress fall within the one-year statute of limitations.  *See Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2003) (citing Tenn. Code Ann. § 28-3-104 (2000)).  Thus, the relevant statute of limitations here is one year.

With respect to Pipes, plaintiff alleges Pipes sexually assaulted her on November 14, 2008, and that she never returned to work after that date.  The complaint was filed on October 13, 2010, which is almost to two years after the alleged sexual assault.  Thus, assuming the cause of action against Pipes accrued on November 14, 2008, which is the most recent date of any alleged misconduct of Pipes, the claim is barred.  *See Barrett v. Whirlpool Corp.*, 704 F. Supp. 2d 746, 753–54 (M.D. Tenn. 2010) (indicating that a cause of action for

outrageous conduct accrues when the last allegedly harassing act occurred). Because the Court finds that plaintiff's proposed amended complaint remedies this defect and is not futile as discussed *infra*, however, the claim will not be dismissed.

With respect to SMKW, plaintiff alleges that SMKW and its employees "began a smear campaign against [plaintiff] defaming her in the community to silence her complaint and to prevent her from gaining suitable employment" [Doc. 1 ¶ 61]. The Sixth Circuit has stated that a motion to dismiss on statute of limitations grounds "should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief." *New Eng. Health Care Emps. Pension Fund v. Ernst & Young*, LLP, 336 F.3d 495, 501 (6th Cir. 2003) (citations and quotations omitted), *abrogated on other grounds by Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010). "What that means in the statute of limitations context is that dismissal is appropriate only if a complaint clearly shows that the claim is out of time." *Searcy v. Cnty. of Oakland*, 735 F. Supp. 2d 759, 763 (E.D. Mich. 2010) (citation omitted).

In construing the complaint most favorably toward the non-moving party, the Court finds that although plaintiff pleads no particular time period for the "smear campaign," she alleges it was after "her attack and constructive discharge from SMKW" [Doc. 1 ¶ 61]. Thus, it is feasible that the actions of the alleged campaign accrued during the one-year statute of limitations period. Further, defendants have failed to demonstrate that the complaint clearly shows that any outrageous conduct claim against SMKW is out of time. Defendants also argue that the complaint's allegations of outrageous conduct against SMKW are vague and

conclusory and insufficient to state a claim [*See* Doc. 5]. In order to state a claim for outrageous conduct, a plaintiff must demonstrate that: "(1) the conduct complained of was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of resulted in serious mental injury." *Bain*, 936 S.W.2d at 622 (citations omitted). Liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 623 (citations omitted). A successful case will be "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'." *Id.* (citations omitted).

Defendants do not address the elements necessary to state a claim of outrageous conduct; they merely recite the standard enunciated by the Supreme Court in *Twombly* and *Iqbal* and submit that plaintiff's allegations are "cursory" [Doc. 5]. A review of the complaint, however, demonstrates that plaintiff has pleaded sufficient facts pertaining to each element required to state a claim for outrageous conduct.

First, plaintiff pleads that SMKW's conduct was reckless [*See* Doc. 1 ¶ 77 ("The conduct of SMKW during and after the events resulting in the plaintiff's forcible rape by her co-worker were irresponsible and reckless in nature.")].

Second, with respect to outrageous conduct, the Court notes that the Tennessee Supreme Court has recognized that the requirement "is a high standard which has consistently been regarded as a significant limitation on recovery." *Doe 1 ex rel. Doe v.*

11

*Roman Catholic Diocese*, 154 S.W.3d 22, 39 (Tenn. 2005). Despite this high standard, the Court finds plaintiff alleges sufficient facts to withstand the motion to dismiss. Plaintiff alleges that SMKW began a smear campaign against her, defaming her in the community and preventing her from gaining employment.

Third, with respect to the requirement that the outrageous conduct result in "serious mental injury," the Court notes that serious mental injury is that in which "'the distress is so severe that no reasonable [person] could be expected to endure it.'" *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004). Plaintiff alleges that she has suffered mental harm and specifically alleges that she has been diagnosed with Post-Traumatic Stress Disorder by two physicians, for which she continues to seek medical attention. The Court therefore finds plaintiff's allegations sufficient.

In sum, and because of the Court's findings with respect to plaintiff's motion to amend, the Court finds that plaintiff's outrageous conduct claim should not be dismissed.

## B. Retaliation Claim

Plaintiff's claim for retaliation asserts that defendants mislead the community about the alleged rape of plaintiff [Doc. 1 ¶ 70]. Further, plaintiff alleges that defendants, deliberately and with malicious intent, "sought to sway public opinion against the plaintiff to undermine her legal and rightful claims against them" [*Id.* at ¶ 72]. She claims that, as a result of their actions, she could not retain her employment with SMKW nor obtain gainful employment in the local community [*Id.* at ¶¶ 73–74].

Defendants make numerous arguments as to why plaintiff's claim of retaliation should be dismissed. They assert: (1) plaintiff failed to exhaust her administrative remedies, (2) individuals are not liable under Title VII, and (3) Tennessee's one-year statute of limitations bars any state-law claim for retaliation.[4]

### 1. Failure to Exhaust Administrative Remedies

Defendants submit that it "is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge" [Doc. 5 (emphasis omitted)]. They further submit that plaintiff bases her retaliation claim on conduct occurring before she filed her initial charge with the THRC, which was subsequently cross-filed with the EEOC,[5] but she failed to include any allegation or facts demonstrating

_____

[4]While the complaint is unclear as to whether plaintiff asserts a claim for retaliation under the Tennessee Human Rights Act ("THRA") in addition to Title VII, the Court construes the complaint as asserting a claim for retaliation under both laws because plaintiff filed her charge of discrimination with the THRC and because defendants treat the complaint as asserting a claim for retaliation under the THRA.

[5] The charge of discrimination was not filed with the complaint, but the charge of discrimination is attached as an exhibit to defendants' motion to dismiss [Doc. 4-1]. Even if the exhibit is considered outside the pleadings, it does not convert the motion to dismiss into a motion for summary judgment: "[T]he Sixth Circuit has made clear that, although the usual rule is that matters outside the pleadings may not be considered in ruling on a motion to dismiss without converting it into a motion for summary judgment, there are exceptions. Courts may consider . . . public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Trimble v. I.Q. Group*, No. 1:10-CV-26, 2010 WL 3851398, at *1 (E.D. Tenn. Sept. 27, 2010) (citing *J.P. Silverton Indus. L. P. v. Sohm*, 243 F. App'x. 82, 86–87 (6th Cir. 2007) (considering letters from EEOC on motion to dismiss). Therefore, the Court will treat the motion presently before it as one to dismiss without converting the motion to one for summary judgment.

13

retaliation by SMKW in the charge [*Id*.]. Thus, defendants claim plaintiff has failed to exhaust her administrative remedies and that the claim for retaliation must be dismissed.

"It is well-settled that before a person who claims to have been discriminated against in violation of Title VII may seek relief in federal court, the claimant must first unsuccessfully present his or her claim to the EEOC (or the equivalent state entity that has authority to grant or seek relief with respect to the alleged unlawful practice.)[.]" *Wrobbel v. Int'l Broth. of Elec Workers, Local 17*, 638 F. Supp. 2d 780, 790 (E.D. Mich. 2009) (citations omitted). The Sixth Circuit has explained the reason for requiring exhaustion of administrative remedies: "The requirement that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the [Equal Employment Opportunity] Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, 'the preferred means for resolving employment discrimination disputes.'" *Parsons v. Yellow Freight Sys., Inc.*, 741 F.2d 871, 873 (6th Cir. 1984) (alteration in original and citation omitted).

As defendants indicate, the exhaustion requirement "requires that a plaintiff's Title VII complaint be limited to the scope of the EEOC charge or can reasonably be expected to grow out of that charge." *Wrobbel*, 368 F. Supp. 2d at 790 (citations omitted); *see also Spengler v. Worthington Cyclinders*, 615 F.3d 481, 490 (6th Cir. 2010) (citation omitted) (addressing an Age Discrimination in Employment Act claim). Although the Sixth Circuit characterized this requirement as "jurisdictional" in the past, *see Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001), at least two panels of the Sixth Circuit more

14

recently, in light of *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), have stated that the failure to include a claim in an EEOC charge is not jurisdictional. *See Hill v. Nicholson*, 383 F. App'x 503, 508 (6th Cir. 2010); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401–02 (6th Cir. 2008). Therefore, any argument that the Court lacks jurisdiction must fail.

The Court, nevertheless, considers whether plaintiff exhausted her administrative remedies with respect to her claim for retaliation, a prerequisite to filing a lawsuit alleging discrimination under Title VII of the Civil Rights Act of 1964. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (citation omitted). Although claims for retaliation are often exempt from the exhaustion requirement because they arise after a charge of discrimination is filed, retaliation claims based upon conduct occurring before a charge is filed must be included in the charge. *Spengler*, 615 F.3d at 490 (citation omitted). The exhaustion requirement is not "overly rigid, nor should it 'result in the restriction of subsequent complaints based upon procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial proceeding.'" *Randolph*, 453 F.3d 732 (citation omitted).

Here, plaintiff checked the box on the charge of discrimination form indicating that retaliation was one of her claims [Doc. 4-1]. Further, in the area allotted to explain the discriminatory actions taken by the employer, plaintiff provided a summary, albeit brief, of the allegations set forth in the complaint and wrote: "I believe that I have been discriminated against based on my sex, female, and *retaliation*, all in violation of Title VII of the Civil Rights Act of 1964, as amended" [*Id*. (emphasis added)]. The Court therefore disagrees with

15

defendants' argument that plaintiff failed to exhaust her administrative remedies. *Compare Blume v. Potter*, 289 F. App'x 99, 103 (6th Cir. 2008) (finding the district court was correct to consider the merits of the plaintiff's disability-discrimination claim because he checked the box indicating that disability discrimination was one of his claims, described next to the disability box that his disability was being mentally-psychiatric, and stated in his affidavit that the defendant knew he was on medication that affected his reactions to confrontation and was seeing a doctor for depression), *and Rhea v. Dollar Tree Stores, Inc.*, 395 F. Supp. 2d 696, 703–04 (W.D. Tenn. Feb. 2, 2005) (finding the plaintiffs exhausted their administrative remedies regarding their Title VII sex-stereotyping claim because, in the EEOC charge of discrimination forms, they checked that they were discriminated on the basis of sex), *with Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 363 (6th Cir. 2010) (finding the plaintiff failed to exhaust his administrative remedies on his Title VII retaliation claim because he failed to check the box to indicate a charge of retaliation, did not indicate he was alleging retaliation, and there was nothing in the narrative that could have been interpreted as claiming retaliation).

### 2. Liability for Individuals under Title VII[6]

Defendants assert plaintiff cannot state a claim against Pipes for retaliation under Title VII because Title VII does not include liability for individuals [Doc. 5]. The Sixth Circuit has held that "an individual employee/supervisor, who does not otherwise qualify as an

---

[6]The Court notes that defendants have not argued that there is no individual liability under the THRA.

16

'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Plaintiff has not filed a response or otherwise claimed that Pipes alone qualifies as an employer. Accordingly, the Court finds plaintiff's claim for retaliation against Pipes under Title VII cannot stand as a matter of law and will be dismissed.

### 3.    State-Law Claims for Retaliation

Defendants' final argument addresses any retaliation claim plaintiff may assert under Tennessee law. Defendants argue that, to the extent plaintiff's claims are for retaliation under state law, they are barred by the one-year statute of limitations.

In *Weber v. Moses*, the Tennessee Supreme Court held the governing statute of limitations for a claim for retaliatory discharge is the general tort statute of limitations of one year. 938 S.W.2d 387, 393 (Tenn. 1986) (citing Tenn. Code Ann. § 28-3-104 (1980 Repl. And Supp. 1996)). Defendants correctly asserted that the statute of limitations for state law claims, including claims under the THRA, are not tolled during the filing process with the EEOC. *Martin v. Boeing-Oak Ridge Co.*, 244 F. Supp. 2d 863, 872 (E.D. Tenn. 2002).

In construing the complaint most favorably toward plaintiff, plaintiff asserts that, after her constructive discharge, Pipes and SMKW mislead the community about the alleged rape and sought to sway public opinion against plaintiff so that she could not retain her employment with SMKW nor obtain gainful employment in the local community. It is feasible, as discussed *supra*, that these actions accrued during the one-year statute of limitations period, and defendants have failed to persuade the Court that any state-law claim

for retaliation is clearly out of time. Accordingly, any state-law retaliation claim against Pipes and SMKW will not be dismissed.

In sum, with respect to plaintiff's retaliation claim, the motion to dismiss will be granted as to plaintiff's Title VII claim against Pipes and denied in all other respects.

### C. *Quid Pro Quo* Sexual Harassment Claim[7]

Although the Supreme Court has indicated that "the terms *quid pro quo* and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility," the Court observes that the Sixth Circuit continues to employ different tests for establishing *quid pro quo* and hostile work environment claims. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 595, 596–97 (6th Cir. 2009) (stating the different elements required to establish a claim for hostile work environment sexual harassment and *quid pro quo* sexual harassment). Plaintiff expressly alleges a *quid pro quo* sexual harassment claim, and defendants argue only that plaintiff fails to state a claim for *quid pro quo* sexual harassment. Accordingly, the Court limits its analysis to whether plaintiff has stated a *quid pro quo* claim and does not address whether plaintiff has stated, or can state, a hostile work environment claim.

_____

[7]The Court notes defendants have not made separate arguments regarding *quid pro quo* claims under Title VII and the THRA. Even so, "[b]ecause the Tennessee legislature intended the THRA 'to be coextensive with federal law,' claims under the [statute] follow the same analysis as those under Title VII." *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 437 n.1 (6th Cir. 2008) (citation omitted).

18

Defendants argue that to succeed on a *quid pro quo* claim for sexual harassment, a plaintiff must demonstrate "that she was (1) subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) her refusal to submit to the unwelcome demands resulted in an adverse employment action; (4) and liability may be imposed to the employer" [Doc. 5 (citing *Sanford*, 327 F. App'x at 596–97]. They contend plaintiff's complaint fails to state facts sufficient to establish either the third or fourth element. More specifically, they argue that plaintiff was not subjected to an adverse employment action because constructive discharge is not an adverse employment action where it is not precipitated by some official action of the company. Further, defendants submit that Pipes's alleged acts were not official acts of SMKW and that Pipes was neither a supervisory employee who had authority over plaintiff, nor an agent of SMKW; rather, he was plaintiff's co-worker and liability therefore cannot be imposed upon SMKW.

To satisfy the third element,[8] plaintiff "must establish: (1) a tangible employment action or detriment; and (2) a causal relationship between the tangible employment action and [defendants'] alleged actions." *Sanford*, 327 F. App'x at 597 (citation omitted). "Tangible employment actions are significant changes in employment status, 'such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, a change in benefits, or other factors unique to [her] particular situation.'" *Id.* (citation omitted). They

---

[8]Courts use the terms "material adverse employment action" and "tangible job detriment" interchangeably. *Sanford*, 327 F. App'x at 596 n.4.

are "the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Id.* (citation and internal quotation marks omitted).

The Supreme Court, in resolving "the disagreement among the Circuits on whether a constructive discharge brought about by supervisor harassment ranks as a tangible employment action and therefore precludes assertion of the affirmative defense articulated in *Ellerth* and [*Faragher v. Boca Raton*, 524 U.S. 775 (1998)]," has stated that a constructive discharge is not a "tangible employment action" in sexual harassment cases when the discharge is not precipitated by an official act of the company. *Penn. State Police v. Suders*, 542 U.S. 129, 140–41, 148–49 (2004) (holding the *Faragher/Ellerth* defense remains available to employers in constructive discharge cases "unless the plaintiff quit in reasonable response to an adverse action officially changing her employment status or situation"); *see also Plautz v. Potter*, 156 F. App'x 812, 819 (6th Cir. 2005) (stating that *Suders* held a "constructive discharge, while a potential liability-incurring employment action for the employer, is not a 'tangible employment action' in sexual harassment cases").

Plaintiff alleges her constructive discharge was precipitated by the alleged rape [Doc. 1 ¶ 58]. Although defendants reject the contention that Pipes was plaintiff's supervisor or an agent of SMKW, assuming he was given the complaint's allegations that Pipes had authority by virtue of being a son of the founder of SMKW, the alleged rape involved no official actions of SMKW. In *Suders*, the Supreme Court cited *Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27 (1st Cir. 2003), a case where the plaintiff claimed a constructive discharge based on her supervisor's repeated sexual comments and an incident where he

sexually assaulted her. *Suders*, 542 U.S. at 149–50. The supervisors's conduct, the Court stated, involved no official actions and was "exactly the kind of wholly unauthorized conduct for which the affirmative defense was designed." *Id.* at 50 (contrasting the case where a plaintiff is assigned to an extremely dangerous job to retaliate for spurned advances). Accordingly, the Court finds plaintiff fails to state a claim for *quid pro quo* sexual harassment because she has not claimed she suffered an adverse employment action. The *quid pro quo* sexual harassment claim will be dismissed.

## IV.   Plaintiff's Motion to Amend the Complaint

### A.   Plaintiff's Claims for Outrageous Conduct, Retaliation, and *Quid Pro Quo* Sexual Harassment

Defendants argue the proposed complaint alleges nothing to remedy the defects of the original complaint and therefore would not survive a motion to dismiss for the reasons provided in their memorandum in support of their motion to dismiss [Doc. 9]. The Court has reviewed the proposed amended complaint and agrees with defendants that the only new factual allegations contained in the proposed amended complaint are the following:

> 10. Mr. Stone indicated that due to the owner's (Kevin Pipes) propensities for hiring female employess [sic] for the purpose of using his position of authority over them to extort a personal sexual favors, that it would not bode well for Ms. Parton.

> 11. Kevin Pipes regularly and consistently used his company as a harem whereby he provided himself and his son, Chase Pipes, with a conduit of female subjects to fulfill their respective sexual needs.

> 12. The Pipes men had a history of using their position of authority to demand sexual favors from female employees and regularly provided gifts of large value to said employees to purchase their silence once they tired of them.

21

13.   The Pipes men threatened to take away these gifts of cars and real property if these female victims did not maintain their silence about the relationships.

14.   Sensing that Mr. Stone's characterization of the company policy encouraging silence as to the sexual harrasment [sic] of female employees by the owner and his son . . . .

. . .

67.   Subsequent to her constructive discharge, Kevin Pipes and Chase Pipes have made concerted attempts to knowingly manipulate, intimidate, and corruptly persuade their employees to keep silent or to look with disfavor upon the Plaintiff by threatening their jobs, employment status and pay raises, in an effort to hid or conceal their actions against her.

[Docs. 8, 9].

The Court has reviewed the entirety of plaintiff's proposed amended complaint and the allegations set forth therein do not remedy the deficiencies found with respect to the following: plaintiff's Title VII claim against Pipes for retaliation and plaintiff's *quid pro quo* sexual harassment claim.  Therefore, the motion to amend will be denied to the extent it seeks to assert these claims.

Plaintiff's allegations, however, remedy the time-bar issue identified by defendants with respect to plaintiff's claim against Pipes for outrageous conduct.  Specifically, paragraph 67 of the proposed amended complaint alleges conduct of Pipes occurring subsequent to plaintiff's constructive discharge; thus, there is no reason to believe her claim for outrageous conduct against him is clearly out of time.  Defendants claim plaintiff's allegations are vague and insufficient to state a claim, but the Court disagrees.  A review of the proposed amended complaint reveals that plaintiff's allegations are not merely naked

assertions without any factual enhancement, but could support a claim for outrageous conduct against Pipes. Accordingly, to the extent plaintiff's proposed amended complaint seeks to assert a claim against Pipes for outrageous conduct, plaintiff's motion to amend is not futile and will be granted.

### B. Plaintiff's Proposed Witness Tampering Claim

The proposed amended complaint also states a cause of action under 18 U.S.C. § 1512 for tampering with a witness, victim, or an informant. The proposed claim states in part: "[s]ubsequent to her constructive discharge, Kevin Pipes and Chase Pipes have made concerted attempts to knowingly manipulate, intimidate, and corruptly persuade their employees to keep silent or to look with disfavor upon plaintiff by threatening their jobs, employment status and pay raises, in an effort to hide or conceal their actions against her" [Doc. 8 ¶ 67]. Plaintiff claims that "[t]hrough a pattern of conduct, the Defendants knowingly used intimidation, threats, or corruptly persuaded other persons, or attempted to do so, or engaged in misleading conduct toward other persons, with intent"; "have caused or attempted to cause their employees to withhold testimony for fear of losing their job"; and "have sought to dissade [sic] their employees from testifying truthfully about the Defendant's own conduct as it pertains to the Plaintiff" [*Id*. at ¶¶ 74–76].

Even if the conduct relating to the proposed witness tampering claim is true, there is no private cause of action for "tampering with a witness, victim, or an informant" pursuant

to 18 U.S.C. § 1512. *Banks-Bey v. Acxiom*, No. 1:09-CV-1249, 2010 WL 395221, at *3 (N.D. Ohio Jan. 27, 2010) (citations omitted) (dismissing claim under 18 U.S.C. § 1512 because the statute does not give rise to a private right of action); *Shahin v. Darling*, 606 F. Supp. 2d 525, 538–39 (D. Del. 2009) (citations omitted); *Drake v. Enyart*, No. 3:06-CV-217-S, 2006 WL 3524109, at *5 (W.D. Ky. Dec. 4, 2006) (stating 18 U.S.C. § 1512 makes tampering with a witness, victim, or an informant a crime proscribing criminal fines and imprisonment for violation). Therefore, to the extent plaintiff's motion for leave to amend requests leave to add a claim for tampering with a witness, victim, or an informant pursuant to 18 U.S.C. § 1512, that request will be denied.

Accordingly, and in light of the Court's disposition regarding defendant's motion to dismiss, plaintiff's motion for leave to amend the complaint will be granted in part and denied in part.

## V.     Conclusion

For the reasons outlined above, defendants' motion to dismiss [Doc. 5] will be **GRANTED in part and DENIED in part**, and the claim for Title VII retaliation against Pipes as well as the *quid pro quo* sexual harassment claim will be dismissed. Defendants' motion to dismiss for plaintiff's failure to respond [Doc. 7] will be **DENIED as moot** in light of plaintiff's motion to amend. Plaintiff's motion to amend [Doc. 8] will be **GRANTED in part and DENIED in part**. Plaintiff will have leave to amend the complaint in accordance with the Court's findings herein. If plaintiff chooses to file an amended complaint, plaintiff

will have twenty (20) days from the date of the order accompanying this memorandum opinion to do so.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE